UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MITCHELL, #204971,

              Plaintiff,                      No. 13-13632

v.                                    District Judge Avern Cohn
                                    Magistrate Judge R. Steven Whalen

PAUL KLEE, *et al.*,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

On August 22, 2013, Plaintiff James Mitchell, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") presently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging that Defendants' failure to protect him from attack by another prisoner constitutes a violation of his Eighth Amendment rights.

Before the Court is Defendant Paul Klee, Lee McRoberts, Sherman Campbell, Steven Kindinger and Brian Evers' *Motion for Summary Judgment* [Doc. #19] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed below, I recommend that the motion by Sherman Campbell, Steven Kindinger and Brian Evers, construed as a unenumerated Fed.R.Civ.P. 12 motion,

-1-

be GRANTED as to these Defendants, dismissing them WITHOUT PREJUDICE for failure

to exhaust administrative remedies.  I recommend further that claims against Paul Klee, and

Lee McRoberts be dismissed WITH PREJUDICE.

## I.    FACTS

 Plaintiff bases his Eighth Amendment claims on an alleged March 27, 2013 chow

hall attack by another prisoner ("Hinton").  *Complaint*, ¶22.

By way of background, Plaintiff alleges that at the time of the incident, he was

confined to the Resident Treatment Program for mentally ill prisoners at the Gus Harrison

Correctional Facility ("ARF").  *Id.* at ¶¶ 2-3.  Plaintiff alleges that on January 8, 2013, Hinton

threatened to hit Plaintiff with a "mop stick." *Id.* at ¶6.   He alleges that Hinton was later

found "unconscious and beaten," and because prison staff attributed the attack to Plaintiff,

on January 16, 2013, Plaintiff received a misconduct report for fighting with Hinton. *Id.* at

¶¶4-6.  Plaintiff notes that he was later cleared of the misconduct charge.  *Id.* at ¶8.  Plaintiff

alleges that on January 25, 2013, Hinton approached Plaintiff "from behind and attempted

to place Plaintiff in a choke hold." *Id.* at ¶9.  Hinton received a misconduct report for the

incident.  *Id.* at ¶10.  Plaintiff alleges that after the "choke hold incident," he was moved to

a different housing unit.  *Id.* at ¶12.  He alleges that on February 8, 2013, he sent kites to

Defendant Warden Paul Klee ("Defendant Klee"), Deputy Warden Lee McRoberts

("Defendant McRoberts"), and Deputy Warden Sherman Campbell ("Defendant Campbell")

asking to be transferred, noting that he still had contact with Hinton on a weekly basis.  *Id.*

-2-

at ¶14.  He alleges that at the same time, he requested that a Special Problem Offender Notice ("SPON") be generated which would have prevented any contact with Hinton.  *Id.*  He alleges that two days later, he filed a grievance for the purpose of obtaining a SPON, to which Assistant Resident Unit Manager ("ARUM") Steven Kindinger and Resident Unit Manager ("RUM") Brian Evers responded, informing Plaintiff that a SPON would not be issued.  *Id.* at ¶¶15-16.  Plaintiff notes that his grievance became moot when he was transferred to another facility on February 26, 2013.  *Id.* at ¶17.

Plaintiff alleges that he was transferred back to ARF on March 21, 2013, but acknowledges that he was placed in a different housing unit than Hinton.  *Id.* at ¶20.  However, Plaintiff alleges that on March 27, 2013 during meal service, Hinton advanced toward the side of the hall occupied by Plaintiff's unit, then struck Plaintiff "with a closed fist." *Id.* at ¶22.  Plaintiff alleges that he "suffered a busted open knee" requiring a bandage to stop the bleeding, a bruised face, and back strain.  *Id.* at ¶24.  Both prisoners were found guilty of fighting.  *Id.* at ¶23.

Plaintiff alleges that on March 28, 2013, he sent kites to Defendants Klee, McRoberts, and Campbell.  Defendant Campbell responded that he was "not sure" why Plaintiff had been returned to ARF.  *Id.* at ¶26.  According to Plaintiff, on April 8, 2013, Defendant Campbell responded to a kite by stating that MDOC staff was looking for "placement options." *Id.* at ¶28.  Plaintiff alleges that on April 12, 2013, Hinton was removed from the chow hall after he approached Plaintiff's table.  *Id.* at ¶29.  Plaintiff acknowledges that around April 18 or

19, Defendant Kindinger informed him that a SPON had been generated. *Id.* at ¶30. However, Plaintiff alleges that on April 22, 2013, Defendant Klee informed Plaintiff verbally that he would not be transferred "unless the unit staff tell me I should." *Id.* at ¶32. Plaintiff notes, however, that he was transferred to another facility on April 24, 2013. *Id.* at ¶34.

Plaintiff alleges that Defendants violated his Eighth Amendment rights ignoring "a serious threat to his physical safety" resulting in "significant physical injury and psychological suffering . . ." *Id.* at pg. 5. He requests compensatory damages in the amount of $2,500 and punitive damages in the amount of $5,000 against each Defendant.

## II.   STANDARD OF REVIEW

### A.  Exhaustion

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme

Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2385.   Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra*, 549 U.S. at 921, 127 S.Ct. at 216. Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008).   *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

Under the PLRA, a dismissal for failure to exhaust nonjudicial remedies is without prejudice. *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 994 (6th Cir.2006) (citing *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000)); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).   As I noted in *Twohig v. Riley*, 2013 WL 3773365, *3-4 (E.D. Mich. 2013), there has been a divergence of views concerning whether a motion to dismiss under 42 U.S.C. § 1997e(a) is properly characterized as a summary judgment motion, a Rule 12(b)(6) motion, or an unenumerated Rule 12(b) motion. In *Twohig*, I chose the latter as "the more sound approach, particularly given the uncertainty as to whether a dismissal based purely on exhaustion constitutes a "strike" under the PLRA...." *See also McCormick v. Corizon Health, Inc.*, 2014 WL 897371, *2 -3 (E.D.Mich. 2014). I shall proceed likewise in the present case.

-5-

### B. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

### A. Exhaustion (Grievance No. ARF-13-04-1210-17z)[1]

Defendants argue that Campbell, Evers, and Kindinger were not named at Step One of the grievance procedure. *Defendants' Brief* at 5-6, *Docket #19, Defendants' Exhibits A, C.* Citing MDOC Policy Directive (P.D.) 03.02.130(R), they note that the Step One grievance must contain the "who, what, when , where, and why" of the grieved issue. *Id.*

MDOC P.D. 03.02.130(R) states that the "[dates, times, places, and names of all those involved in the issue being grieved are to be included. Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area." Plaintiff's Step One grievance names Defendants Klee and McRoberts but does not mention Defendants Campbell, Evers, or Kindinger. *Defendants' Exhibit C.* The grievance mentions

---

[1]

Plaintiff notes that this action "is based solely on Grievance No. ARF-13-04-1210-17z." *Plaintiff's Response,* 2, *Docket #21.* Defendants' "failure to exhaust" arguments pertaining to other grievances are therefore moot.

"RUM McKee," and later, requests "the full name of . . . RUM McKee for litigation." *Id.*

At Step Three of the same grievance, Plaintiff notes that "'RUM McKee' is a misnomer for

ARUS Kindinger and RUM [] Evers." *Id.* He argues presently that the "misnomer" McKee

at Step One gave sufficient notice to Defendants Kindinger and Evers that they were being

grieved. *Plaintiff's Response* at 2-3.

   Plaintiff's "two birds, one stone" argument is not well taken. I am unaware of any

case law stating that under P.D. 03.02.130(R), naming one individual at Step One would

place two other unnamed Defendants on notice of the claims against them. To the contrary,

the Sixth Circuit has found that the Directive "explicitly require[s]" the prisoner "to name

each person" grieved. *Sullivan v. Kasajaru,* 316 F. Appx 469, 470 (6th Cir. March 13,

2009); *Hall v. Warren*, 443 Fed.Appx. 99, 106, 2011 WL 4916703 (6th Cir. October 18,

2011)(dismissal for failure to exhaust claims against prison physician not mentioned at Step

One of the grievance procedure); *Maxwell v. Correctional Medical Services, Inc.,* 538

Fed.Appx. 682, 688 -689 (September 19, 2013)(noting "strict adherence to the requirement

that prisoners include the names of the defendants in their grievances"). Further, while

Plaintiff's Step One grievance included a request for "the full name" of "RUM McKee," his

Step Two statement did not name "McKee," or either present Defendants Kindinger, or

Evers. *Defendants' Exhibit C.*

   Claims against Defendant Campbell are also subject to dismissal for failure to

exhaust. Plaintiff acknowledges that he did not name Defendant Campbell in the Step One

-8-

grievance, but argues that reference to Defendant Campbell in the Step One MDOC response placed Defendant Campbell on notice of the claims against him. *Id.*

Plaintiff is correct that Defendant Campbell is mentioned in the Step One response. *Id.* The written response indicates that Plaintiff stated in an interview conducted after the grievance was filed that Defendant Campbell denied his request for a SPON. *Id.* Nonetheless, Plaintiff's verbal complaints against Defendant Campbell are insufficient to satisfy the requirements of P.D. 03.02.130(R). The Directive states that the grievance should be completed on a form issued by MDOC staff and "should be confined to the form and not written on the back, sides, or margins of the form, or in the response area." *Id.* Nothing in the language of the Directive suggests that Step One requirements may instead be satisfied with verbal notice.

Because Plaintiff has failed to exhaust his claims against these three Defendants, I recommend that the District Court decline to consider the substance of the allegations against them. *Bock, supra*, 549 U.S. at 219–220, 127 S.Ct. 910–911, 166 L.Ed.2d 798; *see also Johnson v. County of Wayne,* 2008 WL 4279359, *3 (E.D.Mich.September 16, 2008) (Steeh, J.)(*citing Bock,* 549 U.S. at 219–220)("A prisoner's failure to comply with the PLRA's exhaustion requirement deprives a district court of the ability to address the merits of his claims"). *See also Horn v. Bay County Sheriff's Dept.,* 2008 WL 3285808, *8 (E.D.Mich. August 7, 2008) ("Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice").

**B.  The Eighth Amendment "Failure to Protect Claims" Fail as a Matter of Law**

Remaining Defendants Klee and McRoberts argue that Plaintiff is unable to meet either prong of the Eighth Amendment "failure to protect claim." *Defendants' Brief* at 10-20.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement," including "reasonable measures to guarantee the safety of the inmates." *Spencer v. Bouchard* 449 F.3d 721, 727 (6th Cir.2006); *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 128 L.Ed.2d 811 (1994)(internal citations omitted). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833, 114 S.Ct. at 1976.   An Eighth Amendment claim of deliberate indifference, has both objective and subjective components.  *Mingus v. Butler,* 591 F.3d 474, 479-480 (6th Cir. 2010).  "'First, the failure to protect from risk of harm must be objectively sufficiently serious,'"  requiring "'the existence of a sufficiently serious medical need.'"  *Id.* at 480 (*citing Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir.2008)). Second, "the plaintiff must allege facts which, if true, would show that the official being sued perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Linden v. Washtenaw County*, 167 Fed.Appx. 410, 416 (6th Cir. January 6, 2006); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001).  Mere negligence is insufficient to establish the subjective component of a "failure to protect" claim.  *Comstock,* at 703.  In the prison setting, "'deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that

-10-

risk.'" *Mingus,* at 480 (*citing Farmer,* 511 U.S. at 835–36).

Plaintiff's failure to satisfy both prongs of the failure to protect claim mandate dismissal. Under the objective prong, there is some question as to whether Plaintiff can show whether the threat of harm from prisoner Hinton was "sufficiently serious." Defendant Campbell, a Deputy Warden at ARF states, in effect, that prison staff denied Plaintiff's pre-attack request for a SPON for multiple reasons. *Defendants' Exhibit D, Affidavit of Sherman B. Campbell* at ¶¶5-8, noting that under MDOC P.D. 03.03.110, a SPON would not be issued only on the basis of the applicant's allegations. *Id.* at ¶8. Defendant Campbell states that while both Plaintiff and Hinton were 6'11," Hinton was 68 and weighed 156 pounds whereas Mitchell was 45 and weighed 240 pounds. *Id.* at ¶7. Defendant Campbell states that Plaintiff had previously "been identified as a bully and had been pressing other . . . prisoners for store items." *Id.* at ¶6.

On one hand, Plaintiff's allegation that Hinton attempted to place him in a choke hold prior to the March 27, 2013 incident, suggests a "sufficiently serious" threat to satisfy the objective prong of his claim. Conversely, while Hinton was able to make contact with Plaintiff in the chow hall on March 27, a "Prisoner Injury Report" created the day of incident states that Plaintiff's injuries were limited to an "abrasion to [the right] knee" requiring only a topical antibiotic ointment and a "band-aid." *Defendants' Exhibit D.* Plaintiff's need for a band-aid for his knee undermines his claim that Hinton constituted a serious threat to his safety.

-11-

The Court need not reach the question of whether Plaintiff can meet the objective prong of his failure to protect claim given that he cannot show that either Defendant Klee, ARF's Warden, or McRoberts, a Deputy Warden, were deliberately indifferent. Plaintiff acknowledges that after Hinton attempted to place him in a choke hold in January, 2013, prison staff moved Plaintiff to a different unit. *Complaint* at ¶12. Plaintiff acknowledges that following his February 8, 2013 request for a transfer, he was transferred to a different institution on February 26, 2013. *Id.* at ¶17. Plaintiff notes that he was transferred back to ARF on March 21, 2013, but admits that he was placed in a different unit than Hinton. *Id.* at ¶20. Notably, Plaintiff does not allege that he sent a kite to any of the Defendants or articulated the need for a SPON between March 21, 2013 and the attack six days later. Even assuming that Defendants were negligent in failing to take more stringent measure to protect Plaintiff from Hinton, their actions fell short of the reckless disregard required to meet the subjective prong of the Eight Amendment claim. *Farmer,* 511 U.S. at 835–36.

Likewise, Plaintiff is unable to show that Defendants were deliberately indifferent to his safety during or after the attack. A "Critical Incident Report" detailing the interaction between Plaintiff and Hinton on the day of the fight indicates that MDOC intervened between the two prisoners almost immediately and ended the fight by threatening to use a taser. *Defendants' Exhibit D.* While Plaintiff alleges that he sent kites to Defendant Campbell the day after the incident to which Campbell replied "I'm not sure why you are back at ARF," Plaintiff was not attacked a second time after March 27, 2013. Plaintiff

-12-

acknowledges that a SPON was generated by April 19. *Complaint* at ¶30. While Plaintiff alleges that Defendant Klee informed him on April 22, 2013 that he would not transfer Plaintiff "unless the unit staff tell me I should," Plaintiff was transferred two days later. *Id.* at ¶¶32-34. Plaintiff's inability to show that either Defendant Klee or McRoberts were at any time deliberately indifferent to his safety mandates dismissal of the claims against them.

### C. Eleventh Amendment and Qualified Immunity

Defendants Klee and Roberts also argue that they are protected by Eleventh Amendment and Qualified Immunity. *Defendants' Brief* at 20-22, 22-24.

Defendants are correct that under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.2005). While "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law,"

Plaintiff has not specified in what capacity he is suing the individual Defendants. Assuming that the action can be implied to include official capacity claims, they must be dismissed, given that Plaintiff has not requested injunctive relief. *Ernst,* 427 F.3d at 358–359. As such, Defendants Klee and McRoberts are immune from suit in their official

-13-

capacities.

Defendants Klee and McRoberts are also entitled to qualified immunity.  A state official is protected by qualified immunity unless a plaintiff can show (1) that the Defendant violated a constitutional right, and, (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful.  *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier,* the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation.  More recently, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory.  *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.  However, as discussed above, neither Defendant Klee nor McRoberts violated Plaintiff's Eight Amendment rights.  As such, are entitled to qualified immunity under the first prong of *Saucier.*

## IV.   CONCLUSION

Accordingly, I recommend that the motion by Sherman Campbell, Steven Kindinger and Brian Evers, construed as a unenumerated Fed.R.Civ.P. 12 motion [Docket #19],  be GRANTED as to these Defendants, dismissing them WITHOUT PREJUDICE for failure to exhaust administrative remedies.  I recommend further that claims against Paul Klee, and Lee McRoberts be dismissed WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 3, 2015

-15-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on March 3, 2015, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager
